UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-10-494 SSS |
| HARRIS DEMPSEY BALLOW, Defendant. | § § § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and John R. Lewis, Assistant United States Attorney, and the defendant, **HARRIS DEMPSEY BALLOW** ("Defendant"), and Defendant's counsel, Richard Kuniansky, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts One and Twelve of the Third Superseding Indictment. Count One charges Defendant with conspiracy to commit wire fraud in violation of Title 18 United States Code, Section 1349. Count Twelve charges Defendant with wire fraud in violation of Title 18 United States Code, Section 1343. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Third Superseding Indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1349, is imprisonment of not more than 20 years and a fine of not more than $250,000 [handwritten: or twice the gain or loss, whichever is greater.] [initials: RBK] The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1343,

is imprisonment of not more than 20 years and a fine of not more than $250,000 *or twice the gain or loss whichever is greater*. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years *for each count*. See Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for ~~the entire term of supervised release~~ *up to 2 years for each count, which revocation terms may run consecutively to each other*, without credit for time already served on the term of supervised release prior to such violation. See Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Waiver of Appeal and Collateral Review

4. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise

permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

5. In exchange for this Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

8. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Counts 1 and 12 of the Third Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will:

    (i) move to dismiss all remaining counts of the Third Superseding Indictment against Defendant; and

    (ii) move to dismiss all counts of the indictment in this case against Robin Harless Ballow, withdraw the U.S. arrest warrant issued for Robin Harless Ballow, request Mexico to withdraw the Provisional Arrest Warrant for Robin Harless Ballow, and notify Interpol that said warrants have been withdrawn;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

9. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant or Robin Harless Ballow in the Southern District of Texas for offenses arising from conduct charged in the Third Superseding Indictment, although Defendant acknowledges that Robin Harless Ballow was a knowing accomplice to Defendant's criminal conduct as charged in the Third Superseding Indictment, and Defendant also acknowledges that the United States' prosecution of Robin Harless Ballow was justified and pursued in good faith. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's

Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

10. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

11. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should

impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

12. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

13. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 1 and 12 of the Third Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Count One

Harris Dempsey Ballow ("Defendant") pleaded guilty to one count of money laundering in 2003 in U.S. District Court in Houston, Texas. He was released from custody upon a promise to appear for sentencing. In or about December 2004, instead of appearing for sentencing, Defendant fled the United States with his wife Robin Harless Ballow. Over the following five and a half years – until his arrest in Mexico in July 2010 – Defendant lived as a fugitive from justice in Mexico under a series of fake names.

While in Mexico, Defendant conspired with Robin Harless Ballow, Ruben Garza Perez, Kelly Boothe, Jeffrey Janssen Anuth, Albert Budai, Clarence Hudgens, James David Wright, Christopher Harless, Sikiru Bonojo and others to steal money by acquiring control over publicly-traded United States corporations including E-SOL International Corporation ("E-SOL") and Medra Corp. ("Medra") and then using lies and deception to sell the companies' stock to unsuspecting investors, including many Canadian citizens. Defendant and his co-conspirators deceived the investors by hiding Ballow's true identity, his past criminal convictions, and his fugitive status; by publicizing false and misleading information about the control, operations and finances of these companies in order to increase and maintain the value of stock; by failing to fulfill promises to remove restrictions that prevented investors from selling the stock; and by selling land and ownership interests in a fictitious real estate development. Because of the deception, investors wire transferred millions of dollars (in interstate and foreign commerce) to accounts controlled by Defendant and Ruben Garza Perez, as described below.

For example, in 2005, while he was a fugitive, Defendant, pretending to be John Gel, purchased the majority of E-SOL's shares and then installed fictitious persons named Robert Remington and Marilyn Desimone as officers. Assisted by Ruben Garza Perez, Defendant created a Nevada company called Cresent Heights Investment Corp. ("Cresent Heights") to own the E-SOL stock. Ruben Garza Perez, who was president, secretary, treasurer and director of Cresent Heights, served as Defendant's hidden representative. In late 2005, Defendant arranged for E-SOL to issue the majority of its stock to Cresent Heights. Then, over the course of about four years, Defendant sold E-SOL stock to investors in return for millions of dollars by deceiving them about the company's assets and finances, and hiding his identity, his criminal convictions, and his fugitive status.

Defendant, assisted by Ruben Garza Perez, also opened at least twenty accounts for Defendant at brokerage firms in the United States and overseas, and used the brokerage accounts to manipulate the value of E-SOL and Medra stock, and sell it in the public marketplace.

Defendant and Ruben Garza Perez also opened accounts at banks in Mexico (including HSBC Bank, Scotia Bank and Banco Santander) and in Panama (including Multi Credit Bank Inc.). Defendant and Ruben Garza Perez transferred millions of dollars of proceeds from the fraudulent sale of E-SOL and Medra stock into these and other accounts.

For example, pursuant to Defendant's instructions, Ruben Garza Perez wire transferred over $500,000 from a brokerage account at Legent Clearing in the United States to HSBC Bank in

Mexico and Multi Credit Bank in Panama. The money transferred was in large part proceeds from the fraudulent sale of E-SOL stock to the public. Operating under Defendant's instructions, Ruben Garza Perez also wire transferred millions of dollars of investors' money from an account in the name of E-SOL at Wells Fargo Bank, in Nevada, to Scotia Bank, HSBC Bank and Banco Santander, all in Mexico.

Count Twelve

"P.H.", who lived in the Southern District of Texas and Puerto Aventuras, Mexico, was an investor defrauded by Defendant and his accomplices. In or about July 2009, Defendant, calling himself Bubba and Tom Brown and hiding his identity, his criminal convictions and his fugitive status, used false information to convince P.H. to send US$5 million to a bank account secretly controlled by Defendant in return for stock in E-SOL.

Defendant falsely represented to P.H. that E-SOL was developing a golf and recreational resort in the jungle near Cancun, Mexico, called Monarch Cancun Resort, and that a well-known Mexican engineering firm called Ingenieros Civiles Asociados, S.A. de C.V. (ICA) would construct the resort and build a toll road from the resort to the sea. Defendant also told P.H. that E-SOL was about to be listed on the American Stock Exchange. In fact, ICA never agreed to construct the resort or build the road. E-SOL never hired any builder for the resort, obtained a bid from a builder, created construction plans for the resort, or obtained permits necessary to build the resort. Furthermore, E-SOL did not meet the requirements to be listed on that stock exchange. Defendant's statement to P.H. were lies designed to trick P.H. into believing that the value of E-SOL's stock was likely to rise.

On July 1, 2009, Defendant's co-conspirator Clarence Hudgens sent an email instructing P.H. to wire transfer his $5 million to E-SOL's account number 1006968810 at Wells Fargo. Hudgens falsely told P.H. that, in return for the $5 million, he would receive "free-trading" E-SOL stock that could be sold at any time in the public marketplace.

P.H. wire transferred the $5 million on July 17, 2009, from Fidelity Investments, in The Woodlands, in the Southern District of Texas, to E-SOL's bank account at Wells Fargo in Reno, Nevada. Defendant spent almost the entire $5 million over the course of the next twelve months.

In exchange for the $5 million, Defendant gave P.H. ownership of a Belize corporation called Azure Capital Corp. ("Azure"). Azure, in turn, owned five million shares of E-SOL stock that was, in fact, worthless and impossible to sell in the public marketplace.

**Breach of Plea Agreement**

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains,

conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents

necessary to effectuate such transfer. Defendant also agrees to direct any banks that have custody of his assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that restitution and fines are separate components of sentencing and are separate obligations.

## Restitution

19. Defendant agrees to pay full restitution to the victims regardless of the counts of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victims incurred a monetary loss of at least $32,544,944. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 4 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Fines

20. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 4 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

21. This written plea agreement, consisting of 12 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

22. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _February 02_, 2018.

X _Harris Ballow_
Defendant

Subscribed and sworn to before me on _February 02_, 2018.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _N. Flores_
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
John R. Lewis
Assistant United States Attorney

_____
Richard Kuhiansky
Attorney for Defendant

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-10-494 SSS |
| HARRIS DEMPSEY BALLOW, Defendant. | § § § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____        2-2-18
Attorney for Defendant                             Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

X Harris Ballow                                     2-2-18
Defendant                                                 Date

12